REQUESTED BY: E. Benjamin Nelson Governor
You have asked for advice regarding whether it is "feasible or legally possible to recover the money" paid by the Department of Social Services [DSS] to child care providers for three grandchildren living with Sophiae Foster, mother of Joseph P. "Sonny" Foster.
As discussed further below, our research shows that it would not be feasible or legally possible to recover the money from the day care providers or from Sophiae Foster, however, as you did when Sonny Foster received a pay raise you disapproved of, you could ask him or Ms. Harvey, rather than the taxpayers, to be financially responsible for the improper expenditures of state and federal funds.
We understand the facts to be as follows:
1. In March of 1993, Sophiae Foster requested a child care subsidy from DSS for three grandchildren whom she had accepted into her care. Sophiae Foster was not eligible for the child care subsidy under DSS regulations because her income level was too high.
2. Sonny Foster [Department of Administrative Services Deputy Director, Personnel Director, and chief labor negotiator for the state] contacted Mary Dean Harvey [Director of DSS] to protest the DSS decision to deny his mother the child care subsidy.
3. By order of Ms. Harvey, DSS paid a total of $9,774 to child care providers for the care of the three grandchildren of Sophiae Foster, beginning March 22, 1993, and continuing through March of 1994.
4. Although other individuals in similar situations had applied for child care subsidies, no other applications had been approved by DSS when the applicant did not meet the income eligibility requirement.
5. In 1993, 63.4 percent of the funds distributed by DSS under the child care subsidy program were state funds, with the remainder consisting of federal funds. In 1994, 74 percent of such funds were state monies, with the remainder consisting of federal funds.
We conclude that it is neither feasible nor legally possible to recover the money from either the child care providers or from Sophiae Foster. The child care providers simply received compensation for services rendered, and did not engage in any fraud or wrongdoing. Similarly, there is no evidence that Sophiae Foster misrepresented her status when making application to DSS for the child care subsidy. So, it cannot be said that she engaged in any fraud or wrongdoing which caused her to receive the benefits of the child care services for her grandchildren. Neither can it be proven that she was unjustly enriched by the child care subsidies, because if the subsidies had been denied she might have chosen one of a number of other alternatives for the care of the children.
It was Mary Dean Harvey, acting on the encouragement of Sonny Foster, who failed to follow DSS regulations when authorizing the child care subsidy for Sophiae Foster.
Federal statutes and regulations do not provide a mechanism for recovery of such funds from the recipients or from state officers or employees when funds are appropriated contrary to approved regulations. Federal law does provide that "[e]ach State shall repay to the United States amounts ultimately found not to have been expended in accordance with this subchapter, or the Secretary [of Health and Human Services] may offset such amounts against any other amount to which the State is or may become entitled under this subchapter." 42 U.S.C. § 1397e (b). [emphasis added]. The Department of Health and Human Services has sought and won repayment in the past, when it found that a state department of social services had misspent federal funds. See,e.g., Maryland Department of Human Resources v. Department ofHealth and Human Services, 763 F.2d 1441 (D.C. Cir. 1985).
State employees, including the Director of DSS, are bonded under a blanket corporate surety bond "for faithful performance and honesty in an amount not to exceed one million dollars." Neb. Rev. Stat. § 11-201 (1991). The deductible for the state under the blanket surety bond, however, is $10,000. So, the surety bond does not provide a mechanism for the recovery of the funds. Yet, the State and its taxpayers should be made whole with respect to this loss.
In the past, when Sonny Foster received a salary bonus contrary to the policies of your administration, you requested that he repay the bonus to the State, and he did so. The most equitable and expeditious way for the State to recover the funds paid contrary to DSS regulations would be for you to request that the parties responsible for the misappropriation of the funds — Sonny Foster and/or Mary Dean Harvey — repay the amounts wrongfully spent. In this way, Nebraska taxpayers will be made whole and Nebraska will not be at risk of liability to the federal government for the misspent funds.
Yours truly,
 DON STENBERG Attorney General